FILED

2007 May-08  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY BUTLER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Civil Action No.:   05-BE-2390-S** |
| | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| ALABAMA, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This case is before the court on Defendant's motion for summary judgment (Doc. 15).

For the reasons outlined below, the court hereby GRANTS this motion.

### I.   STATEMENT OF FACTS

Plaintiff Jefferey Butler has brought a race and sex discrimination suit against his former

employer, Blue Cross Blue Shield.  The court has reviewed the facts of this case, drawing all

justifiable inferences in favor of the nonmovant.  Mr. Butler is a white male who participated in

the Management Candidate Program at Blue Cross.  The program allows candidates to work in

three six-month rotations in different departments.  Upon the completion of their first rotation,

management candidates may "bid" on permanent management positions that come available.

Generally, employees in the management training program are terminated if they do not

successfully obtain a position by the end of their third rotation; however, Cheryl Myers, the

Manager of Management Development who has overseen the program since 2003, has the

discretion to extend a trainee's candidacy to another rotation.

Mr. Butler served his first rotation in the Medicare Claims Processing Department,

beginning some time in 2003.  During this time, he proposed a project for the other associates to

participate in, based on the television show "Survivor."  Associates would be divided into

"tribes," and the activity would involve "immunity idols."  Upon learning of Mr. Butler's

proposed project, Ms. Myers expressed her concern to him that the "Survivor" theme might

cause some cultural uneasiness among associates.  Mr. Butler perceived that she was troubled by

the "racial nature" of the proposal.  In any event, he consulted with the other associates and,

when none of them had a problem with the "Survivor" activity, he went forward with the project.

Although Ms. Myers was agreeable with that resolution, Mr. Butler believes that she developed

animosity toward him as a result of the "Survivor" incident.

Mr. Butler's second rotation was in Medicare Customer Service.  Near the end of that

rotation, a management position opened up in the Medicare Claims Processing Department, a

department within the area where Mr. Butler had served his first rotation.  Mr. Butler did not

apply for this position.  He told Ms. Myers that he did not apply because his wife was pregnant,

and had a history of difficult pregnancies.  As a result, he did not want to be placed in a facility,

such as the Medicare Claims Processing Department, located far from his wife in case she had an

emergency.

Beginning in the summer of 2004, Mr. Butler served his third rotation in the Claims

Division, where his supervisor was Wayne Harrison.  Mr. Harrison was critical of Mr. Butler's

job performance during the rotation. Near the end of Mr. Butler's rotation in the Claims Division,

Mr. Harrison told Mr. Butler that he did not feel Mr. Butler was prepared to be a manager in the

Claims Division.  As early as August 2004, Mr. Harrison had shared his concerns about Mr.

Butler with Ms. Myers.

During Mr. Butler's third rotation, another management position opened up in the area

where he had served his first rotation.  Shortly after the position became available, Ms. Myers told Mr. Butler that only a few days remained to apply and that he might want to consider applying for the position.  Following this conversation, Mr. Butler bid on the open position, within the time frame allowed for doing so.

Near the end of Mr. Butler's third rotation, Ms. Myers told him that, if he had not secured a management position by the end of his third round, she would not allow him to extend his participation for a fourth round.  Ms. Myers told Mr. Butler that she based her decision on his failure to bid on a management position that opened up in one of the areas in which he had rotated, which she viewed as a poor judgment call.  In addition, Ms. Myers states that she also based her decision on Mr. Butler's hesitancy to bid for a second open management position in an area in which he had worked, and on Mr. Harrison's concerns about Mr. Butler's performance. Mr. Butler states that Ms. Myers did not inform him of either of these reasons at the time she said she would not grant him a fourth rotation.  He further disputes her claim that he only bid on a second open management position after she prodded him to do so, and that Mr. Harrison had serious concerns about Mr. Butler's ability to serve as a manager at Blue Cross.

At the end of Mr. Butler's third rotation in January 2005, Ms. Myers and Pat Giles, from Blue Cross's Human Resources Department, advised Mr. Butler that he was being placed on administrative leave.  At the time, Mr. Butler had two open bids for management positions.  Ms. Myers and Ms. Giles told him that he would be allowed administrative leave until those positions were filled, but that his employment would be terminated if he did not obtain either position.  Mr. Butler did not receive either placement, and was terminated on January 21, 2005.

Mr. Butler now sues Blue Cross on the basis of sex and race discrimination, arguing that Ms. Myers – a black female – impermissibly discriminated against him by terminating him at the

end of his third rotation, rather than allowing him the opportunity to participate in a fourth round.


## II.     STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present. *See* Fed. R. Civ. P. 56. A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings." *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only

of every reasonable inference." *Graham v. State Farm Mutual Ins. Co.*, 193 F. 3d 1274, 1282

(11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court

must grant the motion if no genuine issues of material fact exist and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56.  However, the nonmovant can defeat

summary judgment by showing either a genuine issue of material fact or that the movant is not

entitled to judgment as a matter of law.

### III.   DISCUSSION

#### A.   Plaintiff's *Prima Facie* Case

Plaintiff has not provided direct evidence of race or sex discrimination in this case, and

therefore must prove his claims using circumstantial evidence, pursuant to the burden-shifting

framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under

that framework, Plaintiff must first establish that he has a prima facie case of race or sex

discrimination.  The parties agree that Plaintiff must prove the following to establish his prima

facie case: (1) he is a member of the protected class; (2) he was subjected to adverse employment

action; (3) his employer treated similarly situated employees of a different race/sex more

favorably; and (4) he was qualified to do the job.  *See Maniccia v. Brown*, 171 F.3d 1364, 1369

(11th Cir. 1999).

Defendant argues that Plaintiff has failed to produce sufficient evidence to establish the

third prong of the prima facie case: that a similarly situated employee of a different race/sex (*i.e.*,

a comparator) was treated more favorably than Mr. Butler.  Plaintiff has identified Adrienne

Marshall, a black female in his class of the management training program, as his comparator.

Ms. Marshall also had not secured a management position at the end of her third rotation, but

rather than terminating her, Ms. Myers authorized Ms. Marshall to do a fourth rotation.

Defendant argues that Ms. Marshall does not constitute a comparator because, unlike Plaintiff,

she bid on every management position that came available in the areas in which she had rotated.

The Eleventh Circuit Court of Appeals has held:

> to determine whether employees are similarly situated, we evaluate
> "whether the employees are involved in or accused of the same or
> similar conduct and are disciplined in different ways."  When
> making that determination, "[w]e require that the quantity and
> quality of the comparator's misconduct be nearly identical to
> prevent courts from second-guessing employers' reasonable
> decisions and confusing apples with oranges."

*Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *Maniccia v.*

*Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) and *Nix v. WLCY Radio/Rahall Communications*,

738 F.2d 1181, 1185 (11th Cir.1984) (requiring plaintiff to show "that the misconduct for which

he was discharged was nearly identical to that engaged in by an employee outside the protected

class whom the employer retained")).

Neither Mr. Butler nor his comparator Ms. Marshall has engaged in any misconduct in a

traditional sense.  Nevertheless, Defendant argues that Mr. Butler's failure to bid on the open

Medicare position constituted a type of "misconduct," in which Ms. Marshall did not similarly

engage.  Neither party disputes that Mr. Butler failed to bid on the first open management

position in the Medicare program.  The parties do, however, dispute whether he delayed in

bidding on a second open Medicare position:  Blue Cross argues that he only bid on it because

Ms. Myers prodded him to do so, whereas Mr. Butler counters that he bid on it within the five

day window for bidding on open positions.  For purposes of summary judgment, the court

resolves this factual dispute in favor of the Plaintiff, and will assume that Mr. Butler would have

bid on the position of his own accord.

Notably, the parties dispute what Blue Cross's expectations were for management candidates bidding on open management positions.  Mr. Butler argues he was repeatedly told he did not have to bid on *every* open position.  Blue Cross counters that Ms. Myers questioned his judgment in failing to bid on all "viable" positions – those in areas in which he had experience – as opposed to all open positions.  Blue Cross, however, has not demonstrated that it had an express policy of requiring management candidates to bid on all "viable" positions.

Both Mr. Butler and Ms. Marshall received some level of negative feedback during the evaluation process of their management training program.  Viewing the evidence in the light most favorable to Plaintiff, Mr. Butler's and Ms. Marshall's formal evaluations reflect a similar degree of criticism for their communication and interpersonal skills.  Defendants, however, have presented additional evidence suggesting that Mr. Butler's informal negative feedback was more severe than that received by Ms. Marshall.  For example, Ms. Myers wrote, in a memorandum documenting her rationale for terminating Mr. Butler's participation in the management training program, "[Mr. Harrison] still had questions about [Mr. Butler's] sincerity and his believability. . . .  He said that he thought Jeff [Butler] could do the work, but he still didn't feel he could trust [Mr. Butler].  [Mr. Harrison] could see the possibility of having to terminate [Mr. Butler]."[1] Plaintiff has not produced any similarly harsh criticism of Ms. Marshall, and, at best, has only shown that she received evaluations suggesting she needed improvement in a couple of areas of management skills.  Such arguably constructive criticism certainly does not rise to the level of questioning her integrity as Mr. Harrison appears to have questioned Mr. Butler's integrity.

In considering whether Mr. Butler and Ms. Marshall are similarly situated, the court notes

---

[1]  Although this evidence contains several layers of hearsay, Ms. Myers could ultimately testify as to her impression of Mr. Harrison's feedback regarding Mr. Butler.  As the decision maker, Ms. Myers's intent, rather than Mr. Harrison's actual feelings about Mr. Butler, would be the relevant inquiry.

that the primary differences between the two include: (1) Mr. Butler's failure to bid on the first

open management position in the Medicare program; and (2) the severity of Mr. Butler's negative

evaluations.  Despite these differences, however, the court finds that the question of whether Mr.

Butler and Ms. Marshall are similarly situated is a close one; therefore, the court presumes for

purposes of summary judgment that she is a proper comparator and will proceed to the next step

of the *McDonnell-Douglas* analysis.

> **B.      Pretext**

Assuming, *arguendo*, that Mr. Butler has established that Ms. Marshall is a comparator

for the purposes of establishing his *prima facie* case, the court will evaluate whether he has

demonstrated that Defendant's legitimate, non-discriminatory reasons for his termination are

merely pretext for a discriminatory animus. As Plaintiff suggests, he can establish pretext by

demonstrating:

> "such weaknesses, implausibilities, inconsistencies, incoherencies,
> or contradictions in the employer's proffered legitimate reasons . . .
> that a reasonable factfinder could find them unworthy of credence."
> . . .  The trier of fact may infer the ultimate fact of discrimination
> from the falsity of the employer's explanation.

*Hamilton v. Montgomery Cty. Bd. of Educ.*, 122 F. Supp. 2d 1273, 1281 (M.D. Ala.) (quoting

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997), and citing *Reeves v.*

*Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000)).

Plaintiff attempts to show that Defendant's reasons for terminating him were pretextual

by arguing that he was repeatedly told he was not expected to bid on all management positions

that came open.  He further states that, once he explained his reasons for not bidding on the

Medicare management position, both Ms. Myers and his supervisor in Medicare, Barbara

Edwards, said that they understood his reasons and that Blue Cross Blue Shield wanted him to

take care of his family first.

Mr. Butler also argues that he was only told that his termination was a result of his decision not to pursue the first open Medicare management position, suggesting that the other reasons – the negative feedback from Mr. Harrison and his perceived hesitancy in bidding on the second Medicare management position – were merely *post hoc* rationalizations for his termination.  As Defendant points out, however, Mr. Butler sent emails to himself memorializing the conversations he had with Ms. Myers leading up to the decision not to extend his candidacy. In these emails, he acknowledges Ms. Myers' concerns about feedback she had received from Mr. Harrison.[2]

Plaintiff also contends that Ms. Myers generally favored Ms. Marshall over Mr. Butler. He argues, "[f]or example, Marshall never had to work in Medicare, while Butler did two tours in that department. . . . [T]here are less open [management] positions in Medicare, thereby decreasing the chances of obtaining a position."[3]  In addition, he claims that "[Ms.] Myers spoke constantly with Marshall's direct supervisor Griffin, but never spoke with Butler's direct supervisor Sims."[4]  Assuming Mr. Butler's claims in this regard to be true, they nonetheless do not cast any doubt on Ms. Myers' proffered reasons for deciding not to extend his candidacy.  At best, they show some vague favoritism toward Ms. Marshall as compared to Mr. Butler.  Nothing suggests that any such favoritism, if it occurred, was based on race or sex rather than on personal feelings.  *See Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990) ("To hold that favoritism toward friends and relatives is per se violative of Title VII would be, in

---

[2] Butler Depo., Exh.9 (attached as Exh. A to Defendant's motion for summary judgment).

[3] Pl.'s Br. 24.

[4] Pl.'s Br. 24.

effect, to rewrite federal law."); *cf. McCollum v. Bolger*, 794 F. 2d 602, 610 (11th Cir. 1986)

("Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title

VII.  The plaintiff cannot turn a personal feud into a sex discrimination case by accusation.").

Finally, Plaintiff argues that Ms. Myers' attitude toward him changed after he submitted

his "Survivor" project to her for consideration.  He suggests that this shift constitutes "evidence

of racially motivated behavior."  The court, however, does not view Ms. Myers' concerns about

the "Survivor" project as demonstrating any racial animus against the Plaintiff.  Nothing in the

record suggests that she would not have expressed the same opinion about the cultural

implications of the "Survivor" project had it been proposed by a person of a different race.

Additionally, Plaintiff does not contend that the "Survivor" project itself – which occurred ten

months prior to the decision not to extend his candidacy – was a rationale for his termination.

Rather, he asserts that Ms. Myers' attitude toward him allegedly changed following this incident.

Absent a stronger showing that Ms. Myers' alleged change in attitude following the "Survivor"

incident had anything to do with Mr. Butler's race it does not constitute evidence of pretext..

The court finds that Plaintiff's evidence does not suggest any "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in Blue Cross's legitimate,

non-discriminatory reasons for terminating Mr. Butler.  Defendant has produced a strong record

of evidence supporting Ms. Myers' proffered reasons for declining to extend Mr. Butler's

candidacy.  Most of Plaintiff's arguments boil down to vague theories or Mr. Butler's personal

beliefs as to what motivated Ms. Myers' decisions.  They do not establish, in this court's opinion,

that a reasonable factfinder could find Ms. Myers' stated reasons for his termination "unworthy

of credence."

Additionally, although this case involves a termination, this court finds the case law in

failure to hire or promote cases instructive, particularly given the probationary nature of the

management training program.  The Eleventh Circuit has stated that, to show pretext from

disparities in qualifications between the plaintiff and a comparator,"the test is whether the

disparities in qualifications are of such weight and significance that no reasonable person, in the

exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the

job in question." *Higgins v. Tyson Foods, Inc.*, 196 Fed. Appx. 781, *2 (11th Cir. 2006).  Based

on the record, the court finds that the disparities between Mr. Butler and Ms. Marshall are not

sufficient to show that Blue Cross's reasons for declining to extend Mr. Butler's candidacy for a

third rotation are pretextual.


IV.    **CONCLUSION**

As discussed above, drawing all factual inferences in favor of the Plaintiff, Mr. Butler has

not shown that Blue Cross's proffered reasons for his termination are pretext rather than

legitimate, non-discriminatory reasons.  As such, Blue Cross has demonstrated that no genuine

issue of material fact exists, and that it is entitled to judgment as matter of law.  Blue Cross's

motion for summary judgment, therefore, is GRANTED.

A separate order will be entered contemporaneously with this memorandum opinion.

DATED this 8th of May, 2007.


_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE